IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Anthony T. Higgs, Jr., #264293,<br>                      Petitioner,<br>vs.<br>A.J. Padula, Warden,<br>Lee Correctional Institution,<br>                      Respondent. | Civil Action No. 6:08-0041-SB-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner is currently confined in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Horry County. The petitioner was indicted at the March 25, 1999, term of the Horry County Grand Jury for armed robbery, grand larceny, and possession of a weapon during a violent crime. He was represented by attorney Ronald Hazzard. The petitioner proceeded to a jury trial on February 8-11, 2000, before the Honorable Sidney T. Floyd. At the conclusion of the trial, the petitioner was found guilty of all charges. Judge Floyd sentenced the petitioner to 20 years for armed robbery, six years

for grand larceny concurrent, and five years consecutive for possession of a firearm during the commission of a felony.[1]

The facts of the case were as follows. The petitioner was the lookout in an armed robbery that took place in the Anchor Bank in Myrtle Beach, South Carolina, on February 9, 1998. On that morning, Lee Williams, an employee of the International House of Pancakes ("IHOP"), at the instruction of the owner of the restaurant, was attempting to deposit the receipts of the restaurant in the Anchor Bank. A co-conspirator of the petitioner followed Williams into the bank and stole the bank bag containing the IHOP's money from Mr. Williams. The bank bag contained almost $10,000. The petitioner was seen outside the bank with a handgun, and was seen running from the bank with the co-conspirator when the robbery was completed. Before the robbery, the petitioner was seen in some bushes near the bank, and he was looking around and would crouch down at times and stand up at times. The eyewitness later related to police that when the robber who stole the money bag exited the bank he called out "Where are you?", at which time the petitioner stood up, and they ran from the bank parking lot together. In addition to being identified by a patron of the bank, who was outside the bank waiting on her husband, another witness implicated the petitioner in the robbery.

Jennifer Lannie testified that prior to the robbery of IHOP's bank bag, the petitioner made statements to Ms. Lannie, an employee of the IHOP, about thinking about wanting to rob the IHOP. Ms. Lannie did not take the petitioner seriously until the robbery was committed. The petitioner's former girlfriend, Jennifer Owens, also testified and placed the petitioner in the city of Myrtle Beach near the time of the robbery and living fairly close to the IHOP and the Anchor Bank. The petitioner's girlfriend also testified that she had seen the petitioner in possession of a black handgun prior to the robbery. The witness who

---

[1]The petitioner had a prior record for criminal domestic violence, simple assault, and resisting arrest.

saw the petitioner acting as a lookout also testified the petitioner was in possession of a black handgun.

The State also introduced evidence that the petitioner left the State of South Carolina after the robbery, and after attempts to arrest the petitioner in South Carolina and North Carolina, he was finally arrested in Virginia.

Following his conviction, the petitioner filed a timely appeal, raising only two issues:

> I.  Did the trial court abuse its's discretion by failing to suppress the in court identification of Appellant following a prior out of court identification?
>
> II. Did the trial court err in refusing to grant a directed verdict of not guilty on all charges at the close of the state's case?

He was represented by attorneys Ronald Hazzard and Russell B. Long. The South Carolina Court of Appeals affirmed the conviction in an unpublished opinion filed on October 14, 2002. *State v. Higgs*, 2002-UP-624. The remittitur was filed October 30, 2002.

The petitioner filed an application for post-conviction relief on March 19, 2003, alleging ineffective assistance of counsel. The respondent made its return on April 27, 2004. An evidentiary hearing into the matter was convened on March 22, 2005, at the Horry County Courthouse before the Honorable John L. Breeden. The petitioner was present at the hearing and was represented by attorney J. M. Long, III. The respondent was represented by Christopher L. Newton of the South Carolina Attorney General's Office.

At the hearing, the petitioner testified on his own behalf, as did attorney Russell Long. Ronald W. Hazzard testified on behalf of the State. The PCR court also had before it the records of the Horry County Clerk of Court, the transcript of the proceedings against the petitioner, and the petitioner's records from the South Carolina Department of Corrections. The PCR court denied the petitioner's application for post-conviction relief and dismissed it with prejudice.

3

The petitioner appealed from the denial of his PCR application by way of a petition for certiorari to the South Carolina Supreme Court. The State filed a return to the petition for certiorari, and the case was subsequently transferred to the South Carolina Court of Appeals by order of the South Carolina Supreme Court. On September 25, 2007, the petition for certiorari was denied. The remittitur was filed October 11, 2007.

In his *pro se* petition (both the original and amended versions) now before this court, the petitioner makes the following allegations:

> Ground One (Original): Misidentification
> Supporting Facts: The trial court prohibited any questions pertaining to the reliability of the eyewitness which severed applicant's due process rights. (See attached brief: Ground One)
>
> Ground One (Amended): Did the trial court abuse its discretion by failing to suppress the in court identification of petitioner following a prior out of court identification, thus severing petitioner's Constitutional rights to due process and the equal protection of the law?
>
> Ground Two (Original): Prosecutorial Misconduct
> Supporting Facts: Prosecutor's closing remarks barred applicant the right to a fair and impartial trial. (See attached brief: Ground Two).
>
> Ground Two (Amended): Ineffective Assistance of Counsel. Did trial counsel err in failing to make the proper objections in response to the solicitor's flight argument?

On June 11, 2008, the respondent field a motion for summary judgment. By order filed June 12, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a motion to amend his petition on August 15, 2008, which was granted. On September 8, 2008, the respondent filed an amended return and an amended motion for summary judgment. A second *Roseboro* order was filed on September 9, 2008, and the petitioner filed his response to the motion for summary judgment on October 15, 2008.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant

5

> precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

## ANALYSIS

The respondent first argues that the petitioner's original ground one and ground two are procedurally barred. This court agrees. Both grounds are direct appeal issues. Ground one was not raised at trial, nor was it ruled upon by the trial judge. Further, neither of the issues was raised on direct appeal. If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A petitioner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent. In order to raise a claim of actual innocence, a prisoner "must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

The petitioner in this case has made no such showing.[2]  Based upon the foregoing, these grounds are procedurally barred.

***Amended Ground One***

In his amended ground one, the petitioner claims the trial court abused its discretion in failing to suppress the in-court identification of the petitioner by a witness. On direct appeal, the Court of Appeals found the petitioner's allegations regarding the in-court identification to be manifestly without merit (app. 270). The court quoted from *State v. Stewart*, 272 S.E.2d 628, 629 (S.C. 1980): "'The factors considered in determining the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation'" (app. 270).

The petitioner argued in the PCR action that his trial counsel failed to raise the reliability of the eyewitness in his motion to suppress the photo array and the in-court identification. He further argued that his trial counsel failed to protest the trial court's improper ruling on the *in camera* testimony of the eyewitness, specifically as relating to the *Neil v. Biggers*, 409 U.S. 188 (1972) factors (app. 376). The PCR court found and concluded that the testimony of the eyewitness, Tuyet Hennessey, during the *in camera* hearing and during the trial itself, reflects that her identification in this case satisfies the standard set forth in *Neil v. Biggers* and *State v. Stewart*. Hennessey testified that it was morning when she saw the petitioner outside the bank, there was enough light to see him, she watched him for several minutes (sufficient time for her to smoke about three cigarettes), that she was only a short distance from him (the distance between the Solicitor

---

[2]The petitioner does not address the original grounds in his opposition to the motion for summary judgment.

7

questioning her and her seat on the witness stand), that she was quickly able to identify the petitioner in the photo array, that she was paying attention to him as she sat smoking, and that the police did not suggest to her whom she should pick out of the photo array (app. 27-33; 211-52). Further, the PCR court pointed out that the witness identified the petitioner seated at the defense table as the person she saw outside the bank (app. 223-24). Therefore, the PCR court found the petitioner's two allegations relating to the photo array and in-court identification to be without merit, just as the Court of Appeals did (app. 379).

As argued by the respondent, the decision of the Court of Appeals is entitled to deference. The witness' in-court identification was not tainted by an unduly suggestive out of court identification. The witness' identification prior to trial and at trial were based on her observations of the petitioner at the scene where she had sufficient time, attention, and opportunity to observe and identify the witness. The petitioner cannot overcome the deferential standard of review. The petitioner has failed to show the Court of Appeals unreasonably applied United States Supreme Court precedent; nor has the petitioner shown by clear and convincing evidence that the South Carolina Court of Appeals made an unreasonable factual determination given the entire record before it. The in-court identification was properly admitted, and the trial court did not err. Accordingly, the amended ground should be dismissed with prejudice.

***Amended Ground Two***

In his amended ground two, the petitioner claims his trial counsel was ineffective for failing to make the proper objections in response to the solicitor's flight argument. Trial counsel Ronald Hazzard testified in the PCR hearing that he did recall objecting during the Solicitor's closing to the Solicitor's mention of flight, and the trial court sustained the objection. Trial counsel stated that the reason he did not press the matter was his reluctance to draw further attention to the comments; he believed continual

objections would draw even more jury attention to that issue (pp. 336; *see* supp. app. 335-37).

The PCR court noted that the trial counsel did object to the comments initially as being outside the record; however, the Solicitor mentioned it again shortly thereafter without objection (app. 379). The PCR court found that trial counsel articulated a reasonable trial strategy, stating that he believed continuous objections would call attention to that argument, thereby enhancing its effect (app. 379-80). Further, the PCR court found that the Solicitor's comments did not so infect "'the trial with unfairness so as to make the resulting conviction a denial of due process'" (app. 380) (quoting *State v. Hamilton*, 543 S.E.2d 586, 596 (S.C. Ct. App. 2001)). The court noted that evidence of flight is admissible to show guilty knowledge or intent (app. 380) (citing *State v. Thompson*, 281 S.E.2d 216, 219 (S.C. 1981)), and there was some evidence in the record that the petitioner traveled to Virginia and was apprehended there (*see* supp. app. 252-54). As the Solicitor is allowed to argue facts in the record and reasonable inferences therefrom, and as a reasonable inference from the testimony at trial was that the petitioner fled to Virginia to avoid arrest on the charges, the petitioner's claims relating to the Solicitor's closing arguments were held to be without merit by the PCR court (app. 380) (citing *State v. Copeland*, 468 S.E.2d 620, 624 (S.C. 1996)).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether

9

counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689.

This court agrees with the respondent that the petitioner has failed to overcome the deferential standard of review of the PCR court's ruling. As found by the PCR court, the petitioner's trial counsel articulated a reasonable trial strategy regarding his lack of further objection, because he did not want to call further attention to the flight argument. *See Whitehead v. State*, 417 S.E.2d 530, 531 (S.C. 1992) (reasonable trial strategy will not be held ineffective). Further, the petitioner has failed to show that the result of the proceeding would have been different but for counsel's alleged error. The petitioner had talked about robbing the IHOP prior to the date of the robbery. The robbery took place when the IHOP employee was trying to make a deposit. The petitioner was living in the area at the time and lived close to the IHOP and the Anchor Bank. The petitioner had been seen by his girlfriend with a black gun similar to the one seen by the eyewitness on the day of the robbery. The eyewitness observed the petitioner at close range in good lighting for several minutes acting as the lookout during the robbery and fleeing on foot together with his accomplice. Based upon the foregoing, this ground fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's amended motion for summary judgment (doc. 25) be granted.


March 3, 2009                              s/William M. Catoe
Greenville, South Carolina                 United States Magistrate Judge