IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Anthony T. Higgs, Jr., # 264293,

Petitioner,

v.

A.J. Padula, Warden, Lee Correctional Institution,

Respondent.

Civil Action No. 6:08-00041-SB-WMC

**ORDER**

This matter is before the Court upon the *pro se* Petitioner's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Pursuant to Local Rule 73.02(B)(2)(c), the matter was referred to United States Magistrate Judge William M. Catoe for preliminary determinations. Magistrate Judge Catoe issued a report and recommendation ("R&R") analyzing the Petitioner's claims and recommending that the Court grant the Respondent's motion for summary judgment. Attached to the R&R was a notice advising the Petitioner of his right to file specific, written objections to the R&R within ten days of the date of service of the R&R. See 28 U.S.C. § 636(b)(1). Although it appears that the Petitioner filed his objections a few days late, the Court will consider them as timely filed in the interest of fairness.



**BACKGROUND**

The Petitioner is confined in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Horry County Clerk of Court. At the March 25, 1999 term of the Horry County Grand Jury, the Petitioner was

[1] Because the Petitioner proceeds *pro se*, his pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

indicted for armed robbery, grand larceny, and possession of a weapon during a violent crime. Attorney Ronald Hazzard represented the Petitioner at a jury trial on February 8-11, 2000, before the Honorable Sidney T. Floyd. At the conclusion of the trial, the jury convicted the Petitioner of all charges, and Judge Floyd sentenced him to twenty years for armed robbery, six years (to be served concurrently) for grand larceny, and five years (to be served consecutively) for possession of a firearm during the commission of a felony.

The facts of the case are as follows. On February 9, 1998, an armed robbery took place at the Anchor Bank in Myrtle Beach, South Carolina. On that morning, Lee Williams, an employee at the International House of Pancakes ("IHOP") was attempting to deposit the restaurant's receipts at the Anchor Bank at the instruction of the IHOP owner. When Williams entered the bank, a man alleged to have been a co-conspirator of the Petitioner followed him and stole the bank bag containing the IHOP money. The bag contained almost $10,000.00. At trial, an eyewitness indicated that she saw the Petitioner waiting (as a lookout) in the bushes near the bank and that he was looking around and would stand up and crouch down at times. After the incident, the eyewitness told police that when the robber who stole the money left the bank, he called out, "Where are you?" and the Petitioner stood up and they ran from the bank together. The eyewitness identified the Petitioner from a police photo array, and she also identified him at trial.



In addition, Jennifer Lannie, an IHOP employee, testified that prior to the robbery, the Petitioner made statements to her about thinking about robbing the IHOP. Lannie did not take the Petitioner seriously until after the robbery occurred. Also, the Petitioner's former girlfriend, Jennifer Owens, placed the Petitioner in the city of Myrtle Beach near the time of the robbery and living fairly close to the IHOP and the Anchor Bank. Owens also

testified that she had seen the Petitioner with a black handgun prior to the robbery. At trial the State introduced evidence that the Petitioner left South Carolina after the robbery, and that he was arrested in Virginia after attempts to arrest him in South Carolina and North Carolina failed.

Following his conviction, the Petitioner filed a timely appeal, raising the following two issues: (1) whether the trial court abused its discretion in failing to suppress the in-court identification of the Petitioner following a prior out-of-court identification; and (2) whether the trial court erred in refusing to grant a directed verdict of not guilty on all charges at the close of the State's case. The South Carolina Court of Appeals affirmed the conviction in an unpublished opinion filed on October 14, 2002. State v. Higgs, 2002-UP-624. The remittitur was filed on October 30, 2002.

On March 19, 2003, the Petitioner filed an application for post-conviction relief ("PCR"), alleging ineffective assistance of counsel. On March 22, 2005, the Honorable John L. Breeden held an evidentiary hearing, at which the Petitioner was present and represented by attorney J. M. Long III. The Petitioner, Long, and the Petitioner's trial counsel testified at the hearing, and the Court also had before it the records of the Horry County Clerk of Court, the transcripts of the proceedings against the Petitioner, and the Petitioner's records from the South Carolina Department of Corrections. The PCR Court ultimately denied the Petitioner's PCR application and dismissed it with prejudice.



The Petitioner appealed the denial of his PCR application by way of a petition for certiorari to the South Carolina Supreme Court. The State filed a return, and the case was subsequently transferred to the South Carolina Court of Appeals by order of the South Carolina Supreme Court. On September 25, 2007, the petition for certiorari was denied,

and the remittitur was filed on October 11, 2007.

On January 10, 2008, the Petitioner filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following two grounds, taken verbatim from his petition:

> Ground One: Misidentification: The Trial Court prohibited any questions pertaining to the reliability of the eyewitness which severed applicant's due process rights.
> Ground Two: Prosecutorial Misconduct: Prosecutor's closing remarks barred applicant the right to a fair and impartial trial.

(Entry 1 at 5,6.) In August of 2008, the Petitioner filed an amended memorandum, wherein he sets forth his grounds for relief as follows:

> Ground One: Misidentification: Did the trial court abuse its[ ] discretion by failing to suppress the in court identification of petitioner following a prior out of court identification, thus severing petitioner's Constitutional rights to Due Process and the equal protection of the law?
> Ground Two: Ineffective Assistance of Counsel: Did trial counsel err in failing to make the proper objections in response to the solicitor's flight arguments?

(Entry 36 at 2, 12.)

The Respondent filed a motion for summary judgment, asserting that the Petitioner's grounds for relief are procedurally barred and/or that they lack merit. The Magistrate Judge filed an R&R, recommending that the Court grant the Respondent's motion for summary judgment.

## <u>STANDARD OF REVIEW</u>

### I. Legal Standard for Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**II. The Magistrate Judge's R&R**

This Court is charged with conducting a de novo review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those objections. Id.

## DISCUSSION

**I. Federal Habeas Corpus Relief**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief may be awarded only if (1) the state court adjudication of the claim on its merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application"

clauses have independent meaning. 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established federal law only if it is "substantially different" from the relevant Supreme Court precedent whereas it is "an unreasonable application of" clearly established federal law only if it is "objectively unreasonable." Id. at 405, 409. Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct," unless the petitioner can prove otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state prisoner seeking federal habeas relief pursuant to § 2254 faces several procedural obstacles. Importantly, a petitioner needs to present his claims in state court before raising them in federal court under § 2254. See 28 U.S.C. § 2254(b)(1)(A). If a petitioner has not presented his claims in state court, then they generally will be procedurally defaulted, and the federal court will be unable to adjudicate them. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006). A § 2254 petitioner may, however, overcome such a procedural default by showing "cause and prejudice" or by establishing that his confinement constitutes a "miscarriage of justice." Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977); McNeill v. Polk, 476 F.3d 206 (4th Cir. 2007) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A proper showing of "actual innocence" is sufficient to satisfy the "miscarriage of justice" requirement. House v. Bell, 547 U.S. 518, 536-37 (2006).

## II. The Magistrate Judge's R&R and the Petitioner's Objections

In the R&R, the Magistrate Judge first concluded that the Petitioner's original grounds for relief are procedurally defaulted due to the Petitioner's failure to raise those grounds in state court. Moreover, the Magistrate Judge determined that the Petitioner has not overcome the procedural default by showing "cause and prejudice" or by establishing

that his confinement constitutes a "miscarriage of justice."

Next, with respect to the Petitioner's amended ground one (that the trial court abused its discretion in failing to suppress a witness's identification of the Petitioner), the Magistrate Judge noted that the Court of Appeals apparently considered the standards set forth in Neil v. Biggers, 409 U.S. 188 (1972), and State v. Stewart, 272 S.E.2d 628, 629 (S.C. 1980), in evaluating the eyewitness's testimony and identifications of the Petitioner. According to the eyewitness's testimony: it was morning when she saw the Petitioner outside the bank; there was enough light to see him; she watched him for several minutes while she smoked three cigarettes; she was only a short distance from him; she identified him in the photo array, and that the police did not suggest to her whom she should pick out of the photo array. As the PCR court noted, the South Carolina Court of Appeals found this issue to be "manifestly without merit." Even so, however, the PCR court determined that if it were to consider the issue anew, it would find no ineffective assistance of counsel because it would find, as the Court of Appeals found, that the testimony of the eyewitness, both *in camera* and at trial, reflects that her identification satisfies the standard in Neil and Stewart.[2] After a review of the record, including the direct appeal and the PCR proceedings, the Magistrate Judge determined that the Petitioner has failed to show that the state court's adjudication of these issues resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that the state court's adjudication resulted in a decision that was based on an unreasonable

[2] In the order dismissing the Petitioner's PCR, the court also noted that it did not find the Petitioner's testimony credible but that it found trial counsel's and appellate counsel's testimony credible. (Entry 12-6 at 54.)

determination of the facts in light of the evidence presented.

Next, with respect to the Petitioner's amended ground two (that trial counsel was ineffective for failing to properly object to the solicitor's flight argument), the Magistrate Judge determined that the Petitioner was not entitled to relief. On this issue, the PCR court noted that trial counsel did object to the flight comments as being outside the record and that the court sustained the objection. Apparently, however, when the solicitor mentioned flight again, the Petitioner's trial counsel did not object again. During the PCR proceedings, the Petitioner's trial counsel stated that he did not continue to object to the solicitor's flight comments because he did not want to draw more attention to this argument, thereby enhancing its effect. Ultimately, the PCR court determined that trial counsel had articulated a reasonable strategy for not continuing to object. In addition, the PCR court found that the solicitor's comments did not so infect the trial with unfairness to result in a violation of the Petitioner's due process rights. The PCR court noted that evidence of flight is admissible to show guilty knowledge or intent, and that there was some evidence in the record that the petitioner traveled to Virginia and was apprehended there. Based on the foregoing, the PCR court determined that the Petitioner's claims concerning the solicitor's closing arguments were without merit, and the Magistrate Judge agreed.

In his objections to the R&R,[3] the Petitioner first asserts that his original grounds and

[3] The Petitioner does not specifically object to any portion of the R&R; rather, he seems to object to the R&R as a whole by merely rehashing his previous arguments. See United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.") (citations omitted). Although the Petitioner's objections are not specific, and are therefore improper, the Court has done its best to consider them.

his amended grounds are the same and that "only the questions changed." (Entry 40 at 1.) Therefore, the Petitioner claims that his original grounds are not procedurally barred. Here, the Court has considered the merits of the Petitioner's amended grounds (and not found them to be procedurally barred). Thus, to the extent that his original grounds and his amended grounds are the same, the Court finds no error. Stated differently, if the original grounds and the amended grounds are the same, then the Magistrate Judge, in considering only the merits of the amended grounds, did not err. Accordingly, this objection is denied.

Next, the Petitioner repeats his argument that the trial court erred in failing to suppress an eyewitness's identification of the Petitioner and/or that trial counsel was ineffective for failing to object to the issue. Specifically, the Petitioner attacks the reliability of the eyewitness's identification by asserting that it only took thirteen seconds for the perpetrator to enter the bank and leave, and therefore, the eyewitness could not have smoked three cigarettes while watching him crouched behind the bushes waiting for the perpetrator outside the bank. The Petitioner also asserts that the eyewitness was not wearing her glasses at the time of the crime.

Here, during the *in camera* hearing to determine the admissibility of the photo array identification, the trial judge heard testimony from the eyewitness that the officers did not tell her which photo to pick out of the lineup; that she picked out the Petitioner's photo on her own; that she picked out the person that she had seen earlier at the bank; that she was roughly the distance from the Petitioner (at the time of the crime) as she was from the prosecutor (during the *in camera* hearing); that it was morning outside and was light enough for her to see; that she sat in the car and watched the Petitioner and that he was

sitting down but would get up; that she watched him for roughly the time it took to smoke three cigarettes; and that the Petitioner was the person she saw at the bank. When the prosecutor attempted to ask the eyewitness whether the Petitioner had anything to disguise his face from her at the time of the crime, however, the trial judge stated:

> The Court: Excuse me just a minute. Now our purpose is to determine whether there was any impermissible suggestions as far as the Officer is concerned, and her. I think you are getting into what she saw in the – which would not – is not part of what we are here for.
>
> Mr. Williams: Okay.
>
> The Court: So let's stay within the perimeters of what the purpose of this hearing is, is whether or not there was any impermissible suggestion as far as the identification is concerned, because we will be here all day if we are going through that.
>
> Mr. Williams: Yes, sir. I'm just simply trying to establish that she was, in fact, able to see a clear shot of his face.
>
> The Court: That's something for you and the jury later on, not what I'm concerned with, and what we are concerned with, is the Officers, and whether or not there was any type of —

(Entry 12-2 at 30.) Based on this interchange, the Petitioner asserts that the trial judge erred by focusing his inquiry on the suggestiveness of the identification and not considering other factors affecting the reliability of the identification.

In challenging identification testimony, the Supreme Court has outlined a two-step approach. First, a defendant must prove that the identification procedure was impermissibly suggestive. See Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 198-99 (1972). "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." Satcher v. Pruett, 126 F.3d 561, 566 (4th Cir. 1977) (citation omitted). "Second, *if the procedure was unnecessarily suggestive*, a court must look at several factors to determine if the identification testimony is nevertheless reliable under the totality

of the circumstances." Id. (emphasis added); see also United States v. Saunders, 501 F.3d 384, 390 n.1 (4th Cir. 2007) ("When the suggestiveness in the procedure does not reach the impermissible level, the "potential for error" (or potential for misidentification) is left for testing "by a course of cross-examination at trial.") (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).[4] The factors that a court considers in determining the reliability of an identification include the opportunity of the witness to view the criminal during the crime; the witness's degree of attention; the accuracy of the witness's description of the criminal; the level of certainty demonstrated by the witness; and the time between the crime and the identification. See Neil, 409 U.S. at 199-200.

After review, the Court cannot say that the state court's adjudication of this issue resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The trial court determined that the identification was not unduly suggestive, and based on the record, the Court finds no error in this determination. Furthermore, once the trial court determined that the identification was not unduly suggestive, the inquiry arguably ended. See, e.g., United

---

[4] In Manson, the Court stated that under the circumstances of the case it could not say that there was a "very substantial likelihood of irreparable misidentification." 432 U.S. at 116 (quoting Simmons, 390 U.S. at 383). The Court continued:



> Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

Id.

States v. Gamble, 290 Fed. App'x 592, 593 (4th Cir. 2008) (unpublished) ("If the court concludes that the confrontation procedure was not impermissibly suggestive, the inquiry ends.").

Even assuming that the trial court's inquiry did not end there, however, a review of the record indicates that, although the trial court limited the questioning, it nevertheless considered the totality of the circumstances insofar as the court heard the eyewitness testify about her ability to see the Petitioner during the crime, her certainty in identifying the Petitioner, how she identified his photo from the policy photo array, as well as the time between her identification and the crime. Based on the foregoing, the Court does not agree with the Petitioner that the trial court's decision was contrary to, or involved an unreasonable application of, federal law.

Moreover, to the extent that the Petitioner challenges his counsel's performance on this issue, the Court notes that counsel raised the issues undermining the trustworthiness of the eyewitness's identification both on cross-examination and during his closing argument.[5] Based on the record, including the Court's determination that the trial court did

---

[5] For instance, during his closing argument the Petitioner's trial counsel stated:

> The States had brought forth to you, I believe it is, ten witnesses in the course of this trial, and what I find very interesting is that, of all these witnesses they have brought before you over the last few days, there is only one person that you have heard from who said Anthony Higgs was anywhere near that bank, and that was Ms. Hennessey, and the problem is, there are a lot of problems with Ms. Hennessey's statement.
>
> . . . the problem we have here are the uncontradicted facts really don't match up with what Ms. Hennessey told you, and let's look at the tape, the time-elapse tape at the bank. He said, yes, and that based on his view of the tape, and at nine, twelve and thirteen seconds Mr. Williams, Lee Williams from the IHOP, entered the bank, that two seconds later, nine twelve and

not err in admitting the eyewitness's identification, the Court finds that the Petitioner has not shown that his counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that, but for his counsel's alleged errors, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Accordingly, to the extent that the Petitioner asserts an ineffective assistance of counsel claim in amended ground one, the Court finds such a claim to be without merit. Based on the foregoing, the Court agrees with the Magistrate Judge that the Respondent is entitled to summary judgment on amended ground one.

Next, in his objections, the Petitioner asserts that the Magistrate Judge improperly evaluated amended ground two (that trial counsel erred in failing to object to the solicitor's

---

> fifteen seconds, the attacker ran and attacked him, and that eleven seconds after that, at nine twelve and twenty-six seconds, whoever attacked Mr. Williams then turned and ran out of the bank. That is uncontroverted. This whole incident apparently took a period of thirteen seconds.
>
> Now, you look at Ms. Hennessey's testimony and what does she say? She says that there was a man in the bushes, and I sat and I looked at him for a long time, and I know that I tried your patience more than Job[ ]'s patience was ever tried when I kept trying to find out from her what her concept of time is, because if you remember from her testimony, what I asked her, I asked her, Ma'am, I said, did you see the other two men to in the bank, that being Mr. Williams and whoever attacked him. She said no, when we got to the bank – when my husband and I drove up to the bank, there was already noise coming from inside; my husband tried to go in the bank; he couldn't get in the door. Okay. So at that point we are obviously talking about some time in this thirteen second window, and that's why I kept trying to figure out what she was talking about when she kept saying how long she looked at this man who stood up, squatted down, walked around, and did all these things, you know, and I still don't know. I don't know. . . .

(Entry 12-11 at 3-4.)

flight comments after the trial court ruled such comments inadmissible). After review, the Court first notes that the Petitioner's trial counsel did object to the solicitor's flight comments during closing argument. Next, the Court agrees with the PCR court that trial counsel's stated reason for not continuing to object during closing, namely, that he did not want to draw more attention to the argument by continuing to object, was a valid strategic decision on the part of trial counsel. Accordingly, the Court finds that the Petitioner has failed to show that his counsel's performance fell below an objective standard of reasonableness. Furthermore, the Court finds that the Petitioner has not shown that, but for counsel's failure to object again and/or move for a mistrial based on the solicitor's closing argument, the results of the proceeding would have been different. See Strickland, 466 U.S. 668. Accordingly, the Court agrees with the Magistrate Judge that the Respondent is entitled to summary judgment on amended ground two, and the Petitioner's objections are overruled.

**CONCLUSION**

Based on the foregoing, it is

**ORDERED** that the Magistrate Judge's R&R (Entry 37) is adopted to the extent that it is consistent with this order; the Petitioner's objections (Entry 40) are overruled; the Respondent's motion for summary judgment (Entry 25) is granted; and this matter is #14 ended.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

July 27, 2009
Charleston, South Carolina